## *IN THE SUPREME COURT, STATE OF WYOMING*

## 2017 WY 37

*April Term, A.D. 2017*

*April 5, 2017*

THE UNAUTHORIZED PRACTICE
OF LAW COMMITTEE, WYOMING
STATE BAR,

Petitioner,

v.

RAZOR CITY REALTY, a partnership
of KEVIN L. BECK, Responsible
Broker, Wyoming License No. 1065, and
RICHARD K. KISTLER, Associate
Broker, Wyoming License No. 5006,

Respondents.

D-17-0001

## ORDER APPROVING CONSENT AGREEMENT

[¶1] **This matter** came before the Court upon a "Report and Recommendation for Approval of Consent Agreement," filed herein March 2, 2017, by the Unauthorized Practice of Law Committee of the Wyoming State Bar (the Committee). After a careful review of the Committee's Report and Recommendation, the attached "Consent Agreement," the materials attached thereto, and the file, this Court finds that the Report and Recommendation should be approved, confirmed, and adopted by the Court, and that the parties' Consent Agreement should be approved, pursuant to Rule 7(e) of the Rules of Procedure Governing Unauthorized Practice of Law. It is, therefore,

[¶2] **ADJUDGED AND ORDERED** that the Unauthorized Practice of Law Committee's "Report and Recommendation for Approval of Consent Agreement," which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3]  **ADJUDGED AND ORDERED** that the parties' "Consent Agreement" be, and hereby is, accepted by this Court and the terms of the Consent Agreement are hereby adopted.

[¶4]  **DATED** this 4th day of April, 2017.

BY THE COURT:

/s/

**E. JAMES BURKE**
**Chief Justice**

# BEFORE THE UNAUTHORIZED PRACTICE OF LAW COMMITTEE
## WYOMING STATE BAR

In the matter of )
RAZOR CITY REALTY, )
a partnership of KEVIN L. BECK, )
Responsible Broker, Wyoming License )
No. 1065, and RICHARD K. KISTLER, )    UPL Docket No. 2016-004
Associate Broker, Wyoming License )
No. 5006, )
)
Respondents. )

RECEIVED
FEB 13 2017
WYOMING OFFICE
OF BAR COUNSEL

## CONSENT AGREEMENT

THIS CONSENT AGREEMENT is entered into by and between Mark W. Gifford, Bar Counsel for the Wyoming State Bar ("Bar Counsel") and Razor City Realty, a partnership of Kevin L. Beck and Richard K. Kistler; Kevin L. Beck, individually; and Richard K. Kistler, individually (collectively, "Respondents").

WHEREAS, Kevin L. Beck is the Responsible Broker for Razor City Realty, and holds Wyoming Real Estate Commission License No. 1065; and

WHEREAS, Richard K. Kistler is an Associate Broker for Razor City Realty, and holds Wyoming Real Estate Commission License No. 5006; and

WHEREAS, on or about June 9, 2016, Michael Carver, manager of Your Computer Store, LLC, approached Razor City about the possible sale of the assets of Your Computer Store, LLC. After some negotiation, Razor City and Mr. Carver entered into and executed an Exclusive Right to Sell Listing Contract (Business Assets, Leasehold Interest and/or Real Property) (WAR Form 104-1105) (the "Listing Agreement"), a copy of which Listing Agreement is attached as Exhibit A; and

WHEREAS, Mr. Carver, for and on behalf of Your Computer Store, LLC, executed a Real Estate Brokerage Disclosure on June 10, 2016, designating Razor City as the Seller's agent

for the potential sale of the assets of Your Computer Store, LLC (WAR Form 410-0709), a copy of which Real Estate Brokerage Disclosure is attached as Exhibit B; and

WHEREAS, on or about August 2, 2016, Timothy T. Alexander approached Razor City about the possibility of purchasing the assets of Your Computer Store, LLC. After discussion, Mr. Alexander submitted an offer to purchase the assets for the sum of $35,000.00; and

WHEREAS, Razor City prepared a Contract to Buy and Sell Real Estate (Commercial) (WAR Form 310-0411) (the "LLC Purchase and Sale Contract") reflecting Mr. Alexander's offer and making significant modifications to the WAR Form; and

WHEREAS, Mr. Carver accepted the offer on August 3, 2016, as evidenced by his signature on the LLC Purchase and Sale Contract, a copy of which is attached as Exhibit C; and

WHEREAS, as with Mr. Carver, Razor City provided to Mr. Alexander a Real Estate Brokerage Disclosure dated August 2, 2016, a copy of which is attached as Exhibit D; and

WHEREAS, in addition to the Real Estate Brokerage Disclosure provided to Mr. Alexander, Razor City provided a "Notice to Purchasers" advising Mr. Alexander of the potential need to consult with licensed professionals including, inter alia, an attorney, a copy of which is attached as Exhibit E; and

WHEREAS, on August 4, 2016, Mr. Alexander remitted payment to Mr. Carver in the amount of $35,000.00 via cashier's check, a copy of which is attached as Exhibit F; and

WHEREAS, on August 4, 2016, Razor City invoiced Mr. Carver for its 5% commission in the amount of $1,750.00, a copy of which invoice is attached as Exhibit G; and

WHEREAS, Mr. Carver remitted payment via check in the amount of $1,750.00 to Razor City on August 5, 2016, a copy of which is attached as Exhibit H; and

2

WHEREAS, the Wyoming Supreme Court's Rules Governing the Wyoming State Bar

and the Authorized Practice of Law provide, in relevant part:

### Rule 7. Authorization to practice law.
(a) The following persons are authorized to practice law in Wyoming:
    (1) Members of the Wyoming State Bar, as more fully delineated and subject to the limitations set forth in the Bylaws of the Wyoming State Bar;
    (2) Attorneys who have been granted pro hac vice admission as provided in Rule 8, subject to the limitations set forth in that rule;

    (3) Law school clinic supervising attorneys meeting the qualifications of Rule 9, subject to the limitations set forth in that rule;

    (4) Law students meeting the qualifications of Rule 9, subject to the limitations set forth in that rule; and

    (5) Attorneys meeting the qualifications of Rule 5.5(d) of the Wyoming Rules of Professional Conduct, subject to the limitations set forth in that rule.
(b) "Practice law" means providing any legal service for any other person, firm or corporation, with or without compensation, or providing professional legal advice or services where there is a client relationship of trust or reliance, including appearing as an advocate in a representative capacity; drafting pleadings or other documents; or performing any act in a representative capacity in connection with a prospective or pending proceeding before any tribunal.
(c) Whether or not they constitute the practice of law, the following are not prohibited:
\*\*\*
    (3) Statutorily authorized acts by a real estate agent or broker licensed by the Wyoming Real Estate Commission.

\*\*\*

and


WHEREAS, the above-described purchase and sale of Your Computer Store, LLC, did

not involve the purchase and sale of any real property, commercial or otherwise; and


WHEREAS, a copy of the LLC Purchase and Sale Agreement was submitted to the Of-

fice of Bar Counsel, Wyoming State Bar as a possible Unauthorized Practice of Law matter; and


3

WHEREAS, following Bar Counsel's investigation of the matter pursuant to the Rules of Procedure Governing Unauthorized Practice of Law Proceedings (the "UPL Procedural Rules"), the parties have come to terms on this Consent Agreement as provided in Rule 5(f)(3) of said Rules.

NOW, THEREFORE, in consideration of the premises and the foregoing recitals, the accuracy of which are hereby confirmed by the parties, it is agreed:

1.      The Respondents' modification of WAR Form 310-0411 to serve as the LLC Purchase and Sale Contract was not a proper use of the Form, was not a statutorily authorized act for Respondents, and constituted the Unauthorized Practice of Law pursuant to Rule 7 of the Rules Governing the Wyoming State Bar and the Authorized Practice of Law.

2.      Pursuant to Rule 5(f)(3), Respondents agree that they will refrain from similar conduct in the future, including without limitation the use of WAR Forms for other than their intended purpose.

3.      Bar Counsel has agreed to forbear on other sanctions available under the Rules, including seeking a refund of fees collected by Respondents in the transaction; a requirement of restitution; assessment of a fine; commencing civil injunction proceedings; and commencing civil contempt proceedings. However, Bar Counsel expressly reserves the right to pursue all available sanctions in the event Respondents commit conduct in violation with this Consent Agreement or Rule 7 of the Rules Governing the Wyoming State Bar and the Authorized Practice of Law.

4

4.      The parties agree that in the event this Consent Agreement is approved by the Committee on the Unauthorized Practice of Law, Bar Counsel will provide a copy of the approved Consent Agreement to the Wyoming Real Estate Commission.

SO STIPULATED:

Mark W. Gifford, Bar Counsel

Wyoming State Bar

Kevin L. Beck, Individually and on Behalf of Razor City Realty

Richard K. Kistler, Individually and on Behalf of Razor City Realty

STATE OF WYOMING          )
                          ) ss.
COUNTY OF CAMPBELL         )

Subscribed and sworn to before me on this 31st day of January, 2017, by Kevin L. Beck.

5

_____
Notary Public

My Commission Expires:

___12-16-19___

STATE OF WYOMING      )
                      ) ss.
COUNTY OF CAMPBELL    )

Subscribed and sworn to before me on this 31st day of January, 2017, by Richard K. Kistler.

_____
Notary Public

My Commission Expires:

___12-16-19___

Approved as to form and substance:

_____
James R. Salisbury, Counsel for Respondents

6



**EXCLUSIVE RIGHT TO SELL LISTING CONTRACT**
(Business Assets, Leasehold Interest
and/or Real Property)

Prepared: June 9, 2016
Gillette _____ , Wyoming

**EXCLUSIVE RIGHT TO SELL LISTING CONTRACT** from _____ June 13, 2016 _____ , through _____ December 13, 2016 _____ , inclusive, for and in consideration of the real estate brokerage services described below to be performed by _____ Razor City Realty _____ , a duly-licensed Wyoming real estate broker ("Broker"), and

Your Computer Store, LLC

("Seller"), whether one or more, hereby lists with said Broker, upon the terms and conditions set forth herein, the following business assets, leasehold interests (see ITEM VI) and/or real property described below situate in the City or Town of _____ Gillette _____ , County of _____ Campbell _____ , Wyoming, commonly known as

Your Computer Store

and more particularly described as:

Your Computer Store

I. **SELLER AUTHORIZATION**

A. Seller hereby grants to Broker an exclusive right to sell such property within said time at the price and on the terms herein stated, or at such other price and terms which may be accepted by Seller.

B. Seller further authorizes Broker, at Broker's expense, to:

(1) accept, as a fiduciary for both parties, earnest money deposits given as consideration for any purchase offers received and retain such deposits in its trust account until the parties thereto have agreed in writing to the disbursement of such deposits;

(2) advertise the property, place a For Sale sign on the property, show the property at reasonable times;

(3) submit the property to and disclose information regarding the condition of the property and the listing price and terms thereof to any Multiple Listing Service (MLS) or Board of REALTORS ® of which it is a member, and to accept the assistance and cooperation of other brokers;

(4) install lock-box ☐ yes ☐ no *(select one)* ;

(5) offer compensation to other brokers who may represent either the Seller or the purchaser (or working with buyer as a customer);

(6) represent and accept compensation from any other party in case of exchange, as well as from Seller; and;

(7) report the closed sale and the terms thereof to any MLS or Board of REALTORS® of which it is a member for further release to its members (certified appraisers, other sellers or buyers) for their use as comparable market data.

C. Seller hereby directs Broker to disclose to any MLS or Board of REALTORS® of which it is a member, all prospective subagents, prospective purchasers and/or purchaser's agents conditions disclosed by Seller to Broker regarding the real and/or personal property.

D. Seller acknowledges that this Agreement is the initial agreement between the Parties and that compensation in Section IV is the Broker's agreed upon and appropriate compensation for services performed and is not a greater commission for agreeing to a new brokerage relationship with Broker.

II. **BROKER COMPENSATION**

The amount or rate of real estate commission is not fixed by law. It is set by each Broker individually and may be negotiable between the Seller and Broker.

A. Seller hereby agrees to pay Broker in cash at closing for his services: ( ___ 5 ___ % of the selling price) OR ($ ___ N/a ___ ) OR ___ N/a ___ .

(1) In case of any sale or exchange of the subject property within said listing period by Broker, or by any person; or

(2) upon Broker committing in writing, within said period, a purchaser who is ready, willing and able to complete the

WAR Form 104-1105, Exclusive Right to Sell Listing Contract (Business Assets, Leasehold Interest and/or Real Property)
2005 © Wyoming Association of REALTORS ®


Exhibit
A

Serial#: 092058-800148-5582843
Prepared by: Rich Kistler | Razor City Realty | richk@vcn.com | 3076824200

purchase as proposed herein by the Seller; or

(3) if the subject property or any part thereof is sold, exchanged, leased or optioned, or if any other transaction occurs which causes an effective change of ownership of such property from Seller to a third party within _____30_____ days after the expiration of this Contract to or with any person, firm, corporation or other entity or anyone acting for such person, firm, corporation or other entity to whom the property was introduced by Seller, Broker or any of Broker's agents or by any other person, and whose name was disclosed by Broker to Seller prior to expiration or by written notice, deposited in the U.S. Mail, certified mail, return receipt requested and postage prepaid, before midnight of the seventh day following the date of the termination of this Contract, exclusive of the date of termination. A written offer to purchase this property submitted to Seller during the term of this Contract shall constitute the notice required by this subparagraph without further notice to Seller.

(4) In the event that a commission is earned for the lease, sale or other exchange of this property by another Wyoming licensed real estate broker with whom Seller lists the property at anytime after termination of the Contract, the protection stated in Section II A (3) above shall be waived so that Seller is not liable for dual commissions.

B. In the event of forfeiture of payments made by a prospective purchaser on any contract obtained during the term of this Contract, the sums so forfeited shall be divided between Broker and Seller, _____25_____ % thereof to Broker, but not to exceed the commission agreed upon herein, and the balance to Seller.

C. A lease commission of ( _____ % of the total lease payments) OR ( $ _____ ) OR _____ in the event that Broker negotiates and presents to Seller a lease acceptable to the Seller during the term of this Contract, payable immediately upon receipt of lease payment or closing, whichever is sooner.

III.  **PRICE AND TERMS**

The listing price shall be ($ _____35,000.00_____ )
Thirty-five Thousand

Dollars payable upon the following terms and conditions: *(select those that apply)* [X] Cash [ ] Assumption [X] New Loan. [ ] Other: Seller will carry up to $ _____ at no less than _____ % interest for no more than _____ years or:

IV.  **EXISTING FINANCING**

A. The existing loan type is: _No Loan_ _____ loan # _____ . The lender is _____ , whose address is _____ . The approximate remaining balance is $ _____ with payments of $ _____ (P.I.T.I.) with all payments current as of _____ ; interest rate of _____ % [ ] (FIXED) [ ] (VARIABLE) [ ] (IS) [ ] (IS NOT) assumable; qualification by purchaser [ ] (IS) [ ] (IS NOT) required. Seller [ ] (WILL) [ ] (WILL NOT) permit assumption without release of liability. Seller understands that assumption of the existing mortgage(s) without release of his liability will have the effect of continuing the Seller's existing liability.

B. Any additional financing shall be disclosed in Additional Provisions.

C. Seller hereby directs the holder of any note, lien, security agreement, financing statement or other encumbrance secured by the above listed property to disclose to Broker the amount owing on said encumbrance and other terms thereof and provide copies of any and all documents relating to such encumbrances to Broker. Seller hereby directs all utility companies providing service to the property to disclose the history of charges thereof to Broker.

V.  **CLOSING COSTS**

A. Seller shall pay the following additional closing costs in cash or certified funds at closing:

(1) Recording fee for any mortgage release(s), deed preparation and Owner's title insurance policy as stated in VII B below;

(2) Other:

None

B. General taxes for the year of closing based on the most recent assessment, personal property taxes, prepaid rents, water rents, sewer rents, association fees, dues or assessments, mortgage insurance premiums, and interest on encumbrances, if any and if applicable, shall be apportioned through date of closing. Assessments for all special improvements now installed, to the extent due and payable on or before closing, shall be paid by Seller. Any such installments becoming due after closing shall be paid by Purchaser in the amount of $ _____0.00_____ per _____N/a_____ for a period of _____N/a_____ .

C. Closing fee shall be paid by: _____Split by buyer and seller_____ .

D. Any unreleased judgments, liens or other encumbrances effecting all property included in the purchase price, and required to be paid from the proceeds of this transaction or paid by the responsible party in cash or certified funds at time of closing.

Serial#: 092058-800146-5582843
Prepared by: Rich Kistler | Razor City Realty | richk@vcn.com | 3076824200

## VI. ITEMS INCLUDED IN PURCHASE PRICE

A. Business Assets:

(1) Inventory described as
Per inventory list provided by seller

Valuation $_____

(2) Goodwill

Valuation $_____

(3) Fixtures described as
Those in store at time of listing

Valuation $_____

(4) Seller's Covenant Not to Compete:

Term _____

Area _____

Names of persons to be bound

_____

Activity prohibited _____

Valuation $_____

(5) Equipment described as
Those listed in asset list

Valuation $_____

(6) Work in progress/orders itemized as
All

Valuation $_____

(7) Accounts receivable to be collected and retained by Purchaser as shown on Attachment
_____ attached hereto and incorporated herein.

Valuation $_____

(8) Trade name; trademarks and/or copyrights described as
Name to be transferred to buyer

Valuation $_____

(9) Franchise rights described as
None

Valuation $_____

(10) Customer lists, order information, business records described as
Customer List

Valuation $_____

(11) License to operate such business (describe)
None

Valuation $_____

(12) Other tangible and intangible assets (describe)
None

Valuation $_____

B. Leasehold Interest - provide copy of lease if in writing. If not, complete the following:

(1) Terms of lease

(2) Name of lessor

(3) Provide an estoppel agreement from lessor indicating acceptance of assignment.

## VII. TITLE

A. The Owners of Record are _____ Your Computer Store LLC _____ who hold such fee interest as

☐ (Sole Ownership), ☐ (Husband and Wife), ☐ (Joint Tenants with Rights of Survivorship)

☐ (Tenants in Common) ☐ (LLC) ☒ (Partnership) ☐ (Corporation). *Select one.*

Serial#: 092058-800146-5562843
Prepared by: Rich Kistler | Razor City Realty | nchk@vcn.com | 3076824200

The Sellers (if different from the Owners of Record) are
Same

B. In case of sale or exchange, Seller agrees to furnish, at Seller's expense, an Owner's title insurance policy in an amount equal to the purchase price, showing merchantable title in the Seller.

C. In case of sale or exchange, Seller agrees to execute and deliver a general warranty deed including the release and waiver of all homestead rights, if any, and a good and sufficient bill of sale to the purchaser conveying said real and personal properties. Title shall be subject to general taxes for the year of closing, local improvement districts, guaranteed revenues to utility companies, building and zoning regulations, city, county and state subdivision and zoning laws, easements, restrictive covenants, and reservations of record and the following additional encumbrances which will NOT be released or discharged at closing:
None

D. Seller shall, unless waived by Buyer, comply with the Wyoming Bulk Transfer Law (W.S. §§34-21-601 to 34-21-610).

## VIII. CLOSING AND POSSESSION

A. Closing shall occur as mutually agreed in writing between the parties, at a time and place which shall be designated by the Broker. Seller, at Seller's option, may continue to offer subject property for sale until closing. Seller understands, however, that any additional offer accepted may subject Seller to remedies provided by law for breach of the original contract.

B. Possession shall be delivered to Purchaser as mutually agreed in writing between the parties but in no event, without agreement, later than _____ Closing _____ , subject to any existing leases and/or tenancies (copies of all leases and/or tenants' written verifications of rental terms, security/damage deposits, and status shall be provided to Broker). Seller agrees to notify Broker of any change in tenant status immediately.

C. All security/damage deposits shall be transferred to Purchaser at closing.

## IX. CONDITION OF PROPERTY

Seller hereby acknowledges the Seller's legal duty to disclose, on an ongoing basis during the term of this Contract, all known hidden or obvious conditions of the property. Seller hereby indemnifies and holds Broker harmless from all claims arising from Seller's failure to completely and accurately disclose, on an ongoing basis during the term of this Contract, all conditions of the property, the status of all financing and encumbrances and all special facts which may be material to Broker's representation of Seller's property. *(Select A or B):*

_____ A. Seller has completed and attaches as an addendum hereto, the Property Condition Statement (WAR Form
Initial Initial        900C). Known conditions of the real and/or personal property have been set forth on that Property Condition Statement.

_____ B. A Property Condition Statement is not available.
Initial Initial

## X. INSPECTIONS

Seller agrees to permit all electrical, mechanical, structural and/or environmental inspections of the property by Broker, subagents, prospective purchasers or by third persons acting on their behalf, at reasonable times, upon reasonable notice, and without expense to Seller unless otherwise agreed.

## XI. DEFAULTS AND REMEDIES

A. TIME IS OF THE ESSENCE hereof, and any party who fails to tender any payment, or perform any other condition hereof as herein provided, shall be in default of this Contract. In the event of default, the non-defaulting party may elect to either treat this Contract as breached and recover such damages as may be proper, or may treat this Contract as being in full force and effect and require specific performance of the items hereof. In lieu of the remedy provided above to Seller if Buyer is the defaulting party, Seller may elect to terminate the Contract and retain all payments made hereunder as liquidated damages, such among being agreed by the parties hereto to constitute compensation for the loss of opportunity suffered by Seller due to such breach.

B. In the event that any party shall become in default or breach of any of the terms of this Contract, such defaulting or breaching party shall pay all reasonable attorney's fees, costs and other expenses which the non-breaching or non-defaulting party may incur in enforcing this Contract with or without formal proceedings. The non-prevailing party, in any legal dispute, shall pay attorney's fees, expenses and costs. This provision shall not limit any other remedies to which the parties may otherwise be entitled.

C. Seller agrees that in the event of any controversy regarding earnest money or things of value held by Broker, unless Broker receives written instructions from both Buyer and Seller regarding disposition of the earnest money or things of value, Broker, in its sole discretion, may hold the earnest money or things of value or may interplead all parties and deposit the earnest money deposit or things of value into a court of competent jurisdiction. Broker shall be entitled to recover its attorney's fees and costs from the losing party in the action in which the funds are interplead, but if no such award or payment is made, Broker shall recover its court costs and reasonable attorney's fees from the interplead funds or things of value.

Serial# 092058-800146-5582843
Prepared by Rich Kistler | Razor City Realty | richk@vcn.com | 3076824200

## XII. PARTIES AGREEMENTS AND COVENANTS

A. Broker agrees that, until closing, he shall convey to the Seller every written offer and counter offer delivered to him as soon as practicable after receipt.

B. The undersigned Seller and Broker, by their respective signatures hereon, agree that they will not discriminate against any person for reasons of race, color, religion, sex, handicap, familial status or national origin of such person.

C. Seller agrees to refer to Broker all inquiries from other brokers, their agents, and all prospective purchasers received by Seller during the term of this Contract.

D. Seller agrees that Broker shall not be responsible for property management or maintenance of the premises, or utilities, nor shall Broker be liable for damage of any kind occurring to the premises or injury to third parties, unless such damages or injuries shall be caused by the negligence of Broker.

E. The undersigned covenants that upon execution of this Contract:

   (1) If Seller is a partnership, association or corporation, the undersigned is duly authorized to execute this Contract on behalf of such entity. Evidence of authority is attached hereto.

   (2) If Seller is a person or entity other than the owner of record, such Seller has the authority to execute this Contract and perform each and all of the obligations of Seller herein, including the delivery of merchantable title at closing.

   (3) There are no outstanding or contemplated claims in connection with any insurance policy covering the above described property, except:
   None

   (4) There are no legal proceedings that could effect title to the property such as: bankruptcy, foreclosure, repossession, divorce, delinquent child support, etc., except:
   None

   (5) There have been no alterations, repair work or new construction, services performed or materials furnished during the last 12 months for which there are unpaid bills or claims, except:
   None

   (6) On items included in purchase price, there are no chattel mortgages, conditional sales contracts, security agreements, financing statements, or personal property leases effecting any materials, fixtures, appliances, furnishings or equipment placed upon, or installed in or upon said real property or the improvements thereon, except:
   None

   (7) There are no judgments or liens against the subject property or the owner or Seller, EXCEPT general taxes for the year of closing and .
   None

F. As to the business assets, Seller warrants and represents to Broker and Buyer that, except as stated in this Contract and in any schedule attached thereto, Seller has no notice or knowledge of:

   (1) Any road change, road work or any other circumstance which would materially affect the present use of property or the operations of the business.

   (2) Any right granted to underlying lienholders to accelerate their obligation by reason of the transfer of ownership, or any permission to transfer being required and not obtained.

   (3) Any unpaid income taxes, sales taxes, payroll taxes, social security taxes, unemployment taxes, or any other employer/employee taxes due and payable or accrued.

   (4) Any failure of the financial statements and schedules to present the true and correct condition of the business as

G. As to the real property, Seller warrants and represents to Broker and Buyer that except as stated in this contract and in any schedule attached hereto, Seller has no notice or knowledge of:

   (1) Any planned or commenced public improvements which may result in special assessments or otherwise affect the property.

   (2) Any government agency or court order requiring repair, alteration or correction of any existing condition.

H. LEASE. If the real property occupied by the business is owned by Seller, but not sold or exchanged by this agreement, Seller agrees to lease the real property to qualified Buyer on the following terms:
   N/a

I. Seller agrees to furnish Broker and Buyer the information and schedules designated with an "X" in the space preceding lines 1 to 9 of this paragraph no later than _____ June 17, 2016 _____ .

   **X** 1. An inventory of all furniture, fixtures and equipment included in this transaction.

   **X** 2. Copies of all leases affecting equipment, real estate or signs, and copies of all other leases pertaining to the business.

   **X** 3. Estimated principal balance of accounts receivable.

WAR Form 104-1105, Exclusive Right to Sell Listing Contract (Business Assets, Leasehold Interest and/or Real Property)
2005 © Wyoming Association of REALTORS ®

Page 5 of 6

Serial#: 092058-800146-5582843
Prepared by: Rich Kistler | Razor City Realty | richk@vcn.com | 3076624200

**X** 4. Copy of profit and loss statements, balance sheets, business books and records, and income tax returns for the following years: _____, which Buyer may have examined by Buyer's accountants or attorneys.

____ 5. Copies of latest real estate and personal property tax bills.

____ 6. Copies of franchise agreements, if any.

____ 7. Copies of all licenses used in operating the business.

____ 8. An agreement regarding a restriction on Seller competing with Buyer after the closing of this transaction.

____ 9. Others: _____

Seller hereby authorizes the holder of any note, lien, or other encumbrance secured by the above listed property to disclose to the Broker the amount owing on said encumbrances and the terms thereof and further authorizes the undersigned Broker to release such information at his sole discretion, to any prospective Buyer.

## XIII. ADDITIONAL PROVISIONS
None

## XIV. ADDENDA ATTACHED: (check all that apply.)
☐ Lead-Based Paint Disclosure      ☐ Property Condition Disclosure

☐ Addendum for Additional Provisions      ☐ 1031 Tax Deferred Exchange Notice

☒ Real Estate Brokerage Disclosure Form      ☐ Evidence of Authority

☐ Consent Amendment & In-Company Transaction Disclosure      ☐ Security/damage deposits

☐ Copies of all leases and/or written verifications of rental terms      ☐ Other: _____

## XV. DISCLOSURES AND ACKNOWLEDGMENTS

A. Seller hereby acknowledges that Listing Broker (and his agents), unless otherwise disclosed in writing, are acting as the Seller's agent in this transaction.

B. This Contract shall be binding upon and inure to the benefit of the respective parties hereto, their successors, representatives and assigns.

C. This Contract shall be executed in multiple copies and by their signatures hereon the parties acknowledge receipt of a signed copy at the time of signing.

D. All representations made by Broker in the negotiations of this Contract have been incorporated herein; there are no oral agreements between Seller and Broker to modify the terms and conditions hereof and this Contract may be modified only in writing and executed by all parties hereto.

### THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS, CONSULT LEGAL COUNSEL BEFORE SIGNING.

BROKER:

Razor City Realty
801 East 4th Suite 2
Gillette, Wy 82716

By: _Rich Kistler_____ Date _6/10/16_
Signature

Seller _____ Date _6/10/16_ Time _12:10pm_
Your Computer Store, LLC

Seller _____ Date _____ Time _____

_____ Agent

Position or Title

Serial# 092058-800146-5382843
Prepared by Rich Kistler | Razor City Realty | rchk@vcn.com | 3076824200

## IMPORTANT NOTICE
### Razor City Realty



**Razor** **City**
R E A L T Y
601 E. 4th Street
307-660-5699
Razor@vcn.com

(Name of Brokerage Company)
## REAL ESTATE BROKERAGE DISCLOSURE

When you select a Real Estate Brokerage Firm, Broker or salesperson (all referred to as "Broker") to assist you in a real estate transaction, the Broker may do so in one of several capacities. In accordance with Wyoming's Brokerage Relationships Act, this notice discloses the types of working relationships that are available to you.

**Seller's Agent.** (Requires written agreement with Seller)

If a Seller signs a written listing agreement with a Broker and engages the Broker as a Seller's Agent, the broker represents the Seller. On properties listed with other brokerage companies, the Broker may work as an agent for the Seller if the Seller agrees to have the Broker work as a subagent. As an agent or subagent for the Seller, the Broker represents the Seller and owes the Seller a duty of utmost good faith, loyalty, and fidelity in addition to the obligations enumerated below for Intermediaries. Wyo. Stat. § 33-28-303(a). The Seller may be vicariously liable for the acts of the Seller's Agent or Seller's Subagent that are approved, directed or ratified by the Seller.

**Customer.** (No written agreement with Buyer or Seller)

A customer is a party to a real estate transaction who has established no intermediary or agency relationship with any Broker in that transaction. A Broker may work either as an agent for the Seller treating the Buyer as a customer or as an agent for the Buyer treating the Seller as a customer. Also when a Buyer or Seller is represented by another Broker, a Broker may work with the other Buyer or Seller as a customer, having no written agreement, agency or intermediary relationship with either party. A Broker working with a customer shall owe no duty of confidentiality to a customer. Any information shared with Broker may be shared with the other party to the transaction at customer's risk. The customer should not tell the broker any information which the customer does not want shared with the other party to the transaction. The Broker must treat the customer honestly and with fairness disclosing all material matters actually known by the Broker. The Broker owes the Customer the obligations enumerated below for Intermediaries which are marked with an asterisks. W.S. 33-28-310(a).

**Buyer's Agent.** (Requires written agreement with Buyer)

If a Buyer signs a written Buyer Agency Agreement with a Broker, the Broker will act as an agent for the Buyer. If so, the Broker represents the Buyer and owes the Buyer a duty of utmost good faith, loyalty and fidelity in addition to the obligations enumerated below for Intermediaries. The Buyer may be vicariously liable for the acts of the Buyer's Agent that are approved, directed or ratified by the Buyer. As a Buyer's Agent, Wyoming law requires the Broker to disclose to potential Sellers all adverse material facts, which may include material facts regarding the Buyer's financial ability to perform the terms of the transaction. Wyo. Stat. § 33-28-304(c). As a Buyer's Agent, Broker has duties to disclose to the Buyer certain information; therefore, the Seller should not tell Broker any information which the Seller does not want shared with the Buyer.

**Intermediary.** (Requires written agreement with Seller and/or Buyer)

The Intermediary relationship is a non-agency relationship which may be established between a Broker and a Seller and/or a Broker and a Buyer. A Seller may choose to engage a Broker as an Intermediary when listing a property. A Buyer may also choose to engage a Broker as an Intermediary. An Intermediary shall not act as an agent or advocate for any party and shall be limited to providing those services set forth below. Wyo. Stat. § 33-28-305.

As an Intermediary (Non-Agent), Broker will not represent you or act as your agent. The parties to a transaction are not legally responsible for the actions of an Intermediary and an Intermediary does not owe the parties the duties of an agent, including the fiduciary duties of loyalty and fidelity. Broker will have the following obligations to you:

- perform the terms of any written agreement made by the Intermediary with any party or parties to the transaction;
- exercise reasonable skill and care; *
- advise the parties to obtain expert advice as to material matters about which the Intermediary knows but the specifics of which are beyond the expertise of the Intermediary; *
- present all offers and counteroffers in a timely manner; *
- account promptly for all money and property Broker received; *
- keep you fully informed regarding the transaction; *
- obtain the written consent of the parties before assisting the Buyer and Seller in the same real estate transaction as an Intermediary to both parties to the transaction;
- assist in complying with the terms and conditions of any contract and with the closing of the transaction; *

**Exhibit**

**B**

WAR Form 410 -0709. Real Estate Brokerage Disclosure
2009 © Wyoming Association of REALTORS®

Serial# 076826-400146-5582561
Prepared by: Rich Kistler | Razor City Realty | richk@vcn.com | 3076824200

- disclose to the parties any interests the Intermediary may have which are adverse to the interest of either party; *
- disclose to prospective Buyers, known adverse material facts about the property; *
- disclose to prospective Sellers, any known adverse material facts, including adverse material facts pertaining to the Buyer's financial ability to perform the terms of the transaction; *
- disclose to the parties that an Intermediary owes no fiduciary duty either to Buyer or Seller, is not allowed to negotiate on behalf of the Buyer or Seller, and may be prohibited from disclosing information about the other party, which if known, could materially affect negotiations in the real estate transaction.

As Intermediary, Broker will disclose all information to each party, but will not disclose the following information without your informed consent:
- that you may be willing to agree to a price different than the one offered;
- the motivating factors for buying or selling the property;
- that you will agree to financing terms other than those offered; or
- any material information about you, unless disclosure is required by law or if lack of disclosure would constitute dishonest dealing or fraud.

### Change From Agent to Intermediary -- In-House Transaction

If a Buyer who has signed a Buyer Agency Agreement with Broker wants to look at or submit an offer on property Broker has listed as an agent for the Seller, the Seller and the Buyer may consent in writing to allow Broker to change to an Intermediary (non-agency) relationship with both the Buyer and the Seller. Wyo. Stat. § 33-28-307.

An established relationship cannot be modified without the written consent of the Buyer or the Seller. The Buyer or Seller may, but are not required to, negotiate different commission fees as a condition to consenting to a change in relationship.

### Designated Agent. (requires written designation by the brokerage firm and acknowledgement by the Buyer or Seller)

A designated agent means a licensee who is designated by a responsible broker to serve as an agent or intermediary for a Seller or Buyer in a real estate transaction. Wyo. Stat. § 33-28-301 (a)(x).

In order to facilitate a real estate transaction a Brokerage Firm may designate a licensee as your agent or intermediary. The Designated Agent will have the same duties to the Buyer and Seller as a Buyer's or Seller's Agent or Intermediary. The Broker or an appointed "transaction manager" will supervise the transaction and will not disclose to either party confidential information about the Buyer or Seller. The designation of agency may occur at the time the Buyer or Seller enters into an agency agreement with the Brokerage Firm or the designation of agency may occur later if an "in house" real estate transaction occurs. At that time, the Broker or "transaction manager" will immediately disclose to the Buyer and Seller that designated agency will occur.

### Duties Owed by An Agent But Not Owed By An Intermediary.

WHEN ACTING AS THE AGENT FOR ONE PARTY (EITHER BUYER OR SELLER), BROKER HAS FIDUCIARY DUTIES OF UTMOST GOOD FAITH, LOYALTY, AND FIDELITY TO THAT ONE PARTY. A BROKER ENGAGED AS AN INTERMEDIARY DOES NOT REPRESENT THE BUYER OR THE SELLER AND WILL NOT OWE EITHER PARTY THOSE FIDUCIARY DUTIES. HOWEVER, THE INTERMEDIARY MUST EXERCISE REASONABLE SKILL AND CARE AND MUST COMPLY WITH WYOMING LAW. AN INTERMEDIARY IS NOT AN AGENT OR ADVOCATE FOR EITHER PARTY. SELLER AND BUYER SHALL NOT BE LIABLE FOR ACTS OF AN INTERMEDIARY, SO LONG AS THE INTERMEDIARY COMPLIES WITH THE REQUIREMENTS OF WYOMING'S BROKERAGE RELATIONSHIPS ACT. WYO. STAT. § 33-28-306(a)(iii).

THIS WRITTEN DISCLOSURE AND ACKNOWLEDGMENT, BY ITSELF, SHALL NOT CONSTITUTE A CONTRACT OR AGREEMENT WITH THE BROKER OR HIS/HER FIRM. UNTIL THE BUYER OR SELLER EXECUTES THIS DISCLOSURE AND ACKNOWLEDGMENT, NO REPRESENTATION AGREEMENT SHALL BE EXECUTED OR VALID. WYO.STAT. § 33-28-306(b).

NO MATTER WHICH RELATIONSHIP IS ESTABLISHED, A REAL ESTATE BROKER IS NOT ALLOWED TO GIVE LEGAL ADVICE. IF YOU HAVE QUESTIONS ABOUT THIS NOTICE OR ANY DOCUMENT IN A REAL ESTATE TRANSACTION, CONSULT LEGAL COUNSEL AND OTHER COUNSEL BEFORE SIGNING.

The amount or rate of a real estate commission for any brokerage relationship is not fixed by law. It is set by each Broker individually and may be negotiable between the Buyer or Seller and the Broker.

On _____ June 10, 2016 _____ (date), I provided ☒ (Seller) ☐ (Buyer) with a copy of this Real Estate Brokerage Disclosure and have kept a copy for our records.

Brokerage Company _____ Razor City Realty _____

By _____ *Rich Kistler* _____

I/We have been given a copy and have read this Real Estate Brokerage Disclosure on (date)
_____ June 10, 2016 _____ (time) ____ 12:01 pm ____ and hereby acknowledge receipt and understanding of
this Disclosure.

Seller's Signature _____
Your Computer Store, LLC

Seller's Signature _____



**CONTRACT TO BUY AND SELL REAL ESTATE**
**(COMMERCIAL)**

Prepared: _____ August 2, 2016 _____

_____ Gillette _____ , Wyoming

I.     **OFFER TO PURCHASE** dated _____ August 2, 2016 _____ , from

Timothy T. Alexander

("Buyer"), to

Your Computer Store, LLC

("Seller"). Subject to the provisions of this offer, if accepted by Seller, Buyer agrees to buy and Seller agrees to sell the following described real estate situate in the City or Town of _____ Gillette _____ , County of _____ Campbell _____ , Wyoming, commonly known as

Your Computer Store

and more particularly described as:

Your Computer Store

with all improvements thereon, easements and other appurtenances and all fixtures of a permanent nature currently on the premises except as hereinafter provided, in their present condition, ordinary wear and tear excepted, and including all personal property described herein (hereinafter "Property").

~~II.~~ ~~EARNEST MONEY. Buyer delivers $~~ _____ ~~in the form of~~

~~to Broker working with the Buyer,~~ _____ ~~Razor City Realty~~ _____ ~~(Selling Brokerage Firm Name);~~

~~(select one):~~

~~☐ herewith, which Broker working with the Buyer acknowledges having received, or~~

~~☐ no later than _____ hours after mutual acceptance hereof (said funds to be delivered to Listing Brokerage Firm or Closing Agent by the close of the next banking day from receipt of Buyer (if funds are sent directly to closing agent, Broker working with Buyer shall send notice to Listing Brokerage Firm concurrent with such transfer). Listing Brokerage Firm, _____ shall deposit such funds (in its trust account) or (in an appropriate trust account with _____ as Closing Agent). The deposit by Listing Brokerage Firm shall be completed by the close of the next banking day following its receipt from Broker working with the Buyer, or from Buyer, and shall retain such funds in such account. If the earnest money deposit is not received as described in this section, this contract shall be void. Listing Brokerage Firm or Closing Agent shall not disburse such deposit until funds have cleared the bank(s) and, if this offer has been accepted, until closing or until the parties hereto have otherwise agreed in writing regarding disbursement of such funds.~~

III.     **PURCHASE TERMS.** Buyer agrees to buy the above-described property upon the following terms and conditions and for a purchase price of ($ _____ 35,000.00 _____ )

Thirty-five Thousand

Dollars payable as follows:

$ _____ 0.00 _____ earnest money deposit; and at least

$ _____ 0.00 _____ by obtaining a new loan (per Section IV A); and/or

$ _____ 0.00 _____ assumption; and/or

$ _____ 0.00 _____ note and mortgage to Seller (see Section XIV Additional Provisions for terms); and/or

$ _____ 0.00 _____ (other) _____ n/a _____ ;

$ _____ 35,000.00 _____ (approximate) balance of purchase price to be paid in collected or immediately available funds acceptable to the closing firm.



Exhibit

C

## IV. LOAN TERMS.

A. If a new loan is to be obtained, describe and add special terms, if any: Loan type/terms

Said loan to be amortized for a period of _____ years at an initial interest rate not to exceed _____ % per annum resulting in initial ☐ *(annual)* ☐ *(monthly) (select one)* payments of principal and interest of approximately $_____ .

1. Loan discount points required by Lender, if any, shall be paid at closing and shall not exceed _____ % of the total loan amount. The first (1, 2, etc.) _____ loan discount point(s) shall be paid by _____ , and the balance, if any, shall be paid by _____ . Any discount points to be paid by Seller as set forth above shall not be used for the origination fee, closing costs, reserves, or any other costs.

2. If Buyer agrees to accept and can qualify for terms other than the above, the approval of Seller shall not be required, provided Seller incurs no additional expense as a result thereof.

B. If an existing mortgage is to be assumed by Buyer:

1. All mortgage payments shall be current at date of closing; approximate mortgage balance is $_____ .

2. The mortgage interest shall be prorated through the date of closing;

3. The insurance shall not be assigned. Buyer shall provide, at Buyer's expense, an insurance binder for not less than the replacement cost at closing;

4. Buyer shall reimburse Seller at closing for reserves-such as taxes and insurance, if any;

5. Qualification by Buyer ☐ (IS) ☐ (IS NOT) (select one) required;

6. Seller ☐ (SHALL) ☐ (SHALL NOT) (select one) permit assumption without release of liability;

7. Buyer shall pay:
   a. Lender's normal assumption fee but not to exceed $_____ ; and
   b. A ☐ (FIXED) ☐ (VARIABLE) (select one) interest rate not to exceed _____ % per annum as of date of assumption.

C. If Buyer is to pay all or part of the purchase price by executing a promissory note in favor of Seller or if an existing loan is not to be released at closing, this contract is conditional upon Seller's approval of Buyer's financial ability and creditworthiness which approval shall be at Seller's sole and absolute discretion. In such case: (1) Buyer shall supply to Seller on or before _____ , _____ ☐ a.m./☐ p.m. at Buyer's expense, information and documents concerning Buyer's financial, employment and credit condition; (2) Buyer consents that Seller may verify Buyer's financial ability and creditworthiness; (3) any such information and documents received by Seller shall be held by Seller in confidence, and not released to others except to protect Seller's interest in this transaction; and (4) if Seller does not provide written notice of Seller's disapproval to Buyer on or before _____ , _____ ☐ a.m./☐ p.m. then Seller waives this condition. If Seller does provide written notice of disapproval to Buyer on or before said date, this contract shall terminate. If the contract terminates pursuant to this clause, the earnest money deposit receipted for above shall be returned to Buyer subject to the requirements of Section II above.

## V. LOAN APPLICATION.
If a new loan is to be applied for or the existing loan is to be assumed by Buyer, Buyer agrees to:

A. Complete and tender the loan or assumption application to lender within _____ banking days following Seller's acceptance of this offer. If applicable, Buyer also agrees to cooperate with lender and complete any required steps in conjunction with a credit report and appraisal;

B. Buyer shall provide a pre-qualification letter by the close of business day on _____ (Date). "Pre-Qualification" means that a loan application has been made, and a preliminary loan commitment has been obtained from a Wyoming licensed mortgage lender/broker or a person or agency listed in W.S. § 40-23-105 who states that a Credit Report has been obtained and reviewed. Furthermore, the letter must state that on the basis of this review, the mortgage financing for the amount described in Sections III and IV above sufficient to purchase the property should be available.

C. Complete and promptly tender to Lender any and all documents and other information required to process the application;

D. Not withdraw the assumption or loan application or intentionally cause any change in circumstances which would prejudice such application;

E. In the event that Buyer, after having complied with the requirements set forth in Section V, A through D above, fails to qualify for such financing and provides Seller with a written letter of declination by Lender, this Contract shall be voidable at the option of Buyer or Seller, by providing notice to the other party. If voided by Buyer or Seller pursuant to this clause, the earnest money deposit receipted for above shall be returned to Buyer subject to the requirements of

Section II above and this Contract shall terminate.

## VI. CLOSING COSTS.

A. Buyer shall pay the following loan and closing costs in cash or certified funds at closing, or on the date specified by lender:
  1. Loan origination fee, discount points, credit report, survey, appraisal, certificate of location, if required, inspections and/or certification;
  2. Any other costs of securing financing;
  3. Any prepaid tax and/or insurance;
  4. Recording fees for warranty deed and mortgage;
  5. Fees for the title insurance policy as described in Section VIII B below, including fees for extended lien and survey coverage if requested by Buyer; and
  6. Other:
  none

B. Seller shall pay the following additional closing costs in cash or certified funds at closing:
  1. Recording fee for any mortgage releases, deed preparation and Owner's title insurance policy as stated in Section VIII B below;
  2. Any cost of repairs Seller agrees to pay in Section XI B below;
  3. Other:
  none

C. Closing firm's fee shall be paid by ☐ (Buyer) ☐ (Seller) (select applicable): _____ .

D. General taxes for the year of closing based on the most recent assessment, personal property taxes, prepaid rents, water rents, sewer rents, association fees, dues or assessments, and interest on encumbrances, if any and if applicable, shall be apportioned through date of closing. Assessments for all special improvements now installed to the extent due and payable on or before closing shall be paid by Seller. Any such installments becoming due after closing shall be paid by the Buyer in the amount of $ ___0.00___ per ___n/a___ for a period of n/a _____ .

E. Any unreleased judgments, liens, or other encumbrances affecting all property included in the purchase price and required to be paid, shall be paid by Closing Agent from the proceeds of this transaction, or paid by the responsible party in cash or certified funds at time of closing.

## VII. ITEMS INCLUDED IN PURCHASE PRICE. *(Check items included)*

A. Price shall include all fixtures currently on premises, including but not limited to, ☒ all lighting, ☒ heating ☒ plumbing fixtures, ☐ all outdoor plants, ☒ air conditioning, ☐ ventilating fixtures, ☐ evaporative coolers, ☐ built-in appliances, ☐ permanently attached floor coverings, ☐ storm windows, ☐ doors, ☐ screens, ☐ garage door openers, ☐ controls, ☒ smoke/fire detection devices, ☒ curtain and drapery rods, ☐ attached TV antennas, ☐ TV satellite dish, ☐ antenna, ☐ controls, ☐ attached mirrors, ☐ awnings, ☐ water softeners (if owned by Seller), ☐ propane tanks (if owned by Seller), ☐ heating stoves, ☐ fireplace inserts, and
none

PROVIDED, HOWEVER, that the following fixtures of a permanent nature are to be EXCLUDED from the sale:
none

Seller agrees to remove all such excluded fixtures in a workmanlike manner without causing damage to the premises, on or before the date of possession or closing, whichever is sooner. Any such damages shall be repaired at Seller's expense.

B. The price shall also include the following personal property items currently on the premises: **(Personal property shall be transferred with a sufficient Bill of Sale):**
those present on the property at time of inspection, August 2, 2016

, in the condition as stated in Section X below.

## VIII. TITLE

A. Title shall be conveyed to the following named Buyer(s):
no title to convey

as ☐ (Sole Owners), ☐ (Husband and Wife), ☐ (Joint Tenants with Rights of Survivorship), ☐ (Tenants in Common), ☐ (LLC), ☐ (Partnership), ☐ (Corporation) ☐ (Trust) (Buyer select one.)

B. Seller agrees to furnish, at Seller's expense, a current commitment for an Owner's title insurance policy in an amount equal to the purchase price, showing merchantable title in Seller. Seller agrees to deliver the title insurance commitment to Buyer no later than _____ , and deliver the policy to Buyer

without unreasonable delay after closing and pay the premium thereon at the time of closing. Buyer, within _____ days of receipt of the title insurance commitment shall identify and provide to the Seller, in writing, notice of any title defects which Buyer is requesting be addressed before closing. Buyer shall pay for any Mortgagee's title policy and any endorsements or extended survey coverage required by Lender or Buyer.

C. Title shall be merchantable in Seller. Seller agrees to execute and deliver a general warranty deed, or _____ deed, including the release and waiver of all homestead rights, if any, and a good and sufficient bill of sale to Buyer conveying said real and personal properties. Title shall be subject to general taxes for the year of closing, local improvement districts, guaranteed revenues to utility companies, building and zoning regulations, city, county and state subdivision and zoning laws, easements, restrictive covenants, and reservations of record and the following additional encumbrances which shall NOT be released or discharged at closing:

D. Except as stated in Section VIII-C above, if title is not merchantable or otherwise recordable and written notice of such defects in title is given by Buyer to Seller or Listing Broker within the time herein provided for delivery of deed and shall not be rendered merchantable within 30 days after such written notice, then this contract, at Buyer's option, may be specifically enforced or may be declared void and of no effect, and each party hereto shall be released from all obligations hereunder and the payments made hereunder shall be thereupon returned forthwith to Buyer; PROVIDED, HOWEVER, that in lieu of correcting such defects, Seller may, within said 30 days, obtain a commitment for Owner's title insurance policy in the amount of the purchase price reflecting title insurance protection in regard to such defects, and Buyer may elect to accept the then existing title insurance in lieu of such merchantable title, in which case Buyer shall be deemed to have waived such defect. Seller shall pay the full premium for such Owner's title insurance policy.

E. The Property being transferred in this transaction may consist of the Mineral Estate (if all or any portion is owned by the Seller) and the Surface Estate. The "Mineral Estate" means all oil, gas, and other minerals in or under the Property, any royalty under any existing or future lease covering any part of the Property, surface rights (including rights of ingress and egress), production and drilling rights, lease payments and all related benefits. Unless previously separated through a recorded reservation of the mineral rights, the Property being conveyed consists of both estates. If the Mineral Estate is owned by Seller, the Seller will convey the Mineral Estate as part of this transaction unless specifically reserved, in whole or in portion, as part of this Agreement. If the Seller is reserving any portion of the Mineral Estate, such reservation must be included in the Warranty Deed. If the Mineral Estate has been previously separated from the Surface Estate, third parties may have rights to enter and use the surface of the property in the testing, exploration and production of the underlying minerals. The title insurance policy does not provide information on whether the mineral estate or any portion thereof has been reserved and severed from the surface estate. Buyer is advised to timely consult legal counsel with respect to such matters.

**IX. CLOSING AND POSSESSION.**

A. Closing shall occur on _____ August 5, 2016 _____, or as otherwise mutually agreed in writing between the parties, at a time and place which shall be designated by Listing Broker. Seller, at Seller's option, may continue to offer subject property for sale until closing. Seller understands, however, that any additional offer accepted may subject Seller to remedies provided by law for breach of the original Contract.

B. Possession shall be delivered to Buyer on _____ August 5, 2016 _____, _____ ☐ a.m./☐ p.m. or as otherwise mutually agreed in writing between the parties. If Seller fails to deliver possession by the date herein specified, Seller shall be subject to eviction by Buyer. This remedy is in addition to any other remedies Buyer may have.

C. Possession shall be subject to the following leases or tenancies:
  1. Copies of all leases and/or tenants' written verifications of rental terms, security/damage deposits and status shall be provided to Buyer by (select one) ☐ _____ (date) OR ☐ are attached hereto and accepted by Buyer. Seller agrees to notify Buyer of any change in tenant status immediately.
  2. All security/damage deposits shall be assigned and transferred to Buyer at closing.

**X. CONDITION OF PROPERTY.**

A. Seller represents that upon execution of this Contract:
  1. There are no known violations of applicable city, county and/or state subdivision, zoning, building and/or public health codes, ordinances, laws, rules and regulations and any recorded covenants in force and effect as of that date except:

     NOTE: Whether a property meets the above codes, ordinances, laws, rules and regulations is a technical question which may require special expertise. If the Buyer has concerns about these issues, the Buyer should contact the applicable departments of the city, county, and/or state or retain a firm with specialized expertise to investigate the issue.
  2. The property, and all fixtures, appurtenances and improvements thereon, shall be conveyed in their present

condition, ordinary wear and tear excepted, unless otherwise agreed in this Contract.

3.  Property Disclosure. *(Initial A or B).*

_____ _____ A. The condition of the property is as stated in the Property Disclosure (WAR Form 900R), an accurate and
Initial  Initial  complete copy of which is attached hereto and incorporated herein by this reference.

_____ _____ B. A Property Disclosure is not available.
Initial  Initial

B.  Buyer acknowledges and agrees that, upon execution of this Contract:
1.  Buyer is not relying upon any representations of Seller or Seller's Agents or representatives as to any condition which Buyer deems to be material to Buyer's decision to purchase this property; and
2.  Buyer has been advised by Selling Broker of the opportunity to seek legal, financial, construction, air quality (such as mold), environmental (such as radon and lead-based paint) and/or professional inspection services regarding this purchase.

## XI.  INSPECTIONS.

Buyer may obtain, at no expense to Seller, electrical, mechanical, structural, air quality (such as mold) environmental (such as lead-based paint or radon - see attached Addendum) and/or other inspections of the property by qualified professional inspectors and/or engineers, and shall pay for any damage to Seller's property caused by such inspectors and/or engineers. Buyer, or designee, shall have the right to make any inspections of the physical condition of the property at reasonable times, upon at least 24 hours advance notice to Seller. Unless Seller receives written notice, signed by Buyer on or before _____ , _____ ☐ a.m./☐ p.m. (Objection Deadline) of any defect(s) identified by inspectors or engineers that Buyer is requesting to be repaired, the physical condition of the property shall be deemed to be satisfactory to Buyer.

A.  **NOTICE OF DEFECTS.** If inspections disclose defects of the property which Lender requires to be repaired as a loan requirement or that Buyer is requesting to be repaired pursuant to subsection B hereof, Buyer shall provide a copy of the written reports of such inspections and repair requirements to Seller immediately upon receipt.

B.  If Buyer's inspectors have identified or required any repairs of the property before the Objection Deadline set out above, Buyer and Seller agree to share the cost of such repairs as follows:
1.  Select one option: ☐ (Seller to pay) ☐ (Buyer to pay) ☐ (Buyer and Seller agree to equally share) cost of repairs up to $ _____ .
2.  If repairs exceed the total of above amount, any additional cost shall be paid by agreement of the parties. If the parties are unable to agree on payment of additional costs, this contract shall be voidable at the option of Buyer, upon written notice to Seller no later than _____ , _____ ☐ a.m. ☐ p.m. (Resolution Deadline). If not voided by the Buyer, Buyer acknowledges sole responsibility for the additional repairs. With the exception for the amount agreed upon in XII(B)(1), the Buyer accepts the Property "as is, where is" condition without any implied or express warranty by Seller or by any Broker.
3.  If Buyer elects to void the contract in accordance with Section XI (B)(2) above the earnest money deposit shall be returned to Buyer pursuant to the requirements of Section II above.

C.  Waiver of Defects. Buyer acknowledges that he has not been denied any opportunity to inspect property and has done so to Buyer's satisfaction. Other than repairs or defects submitted to the Seller in writing pursuant to XI (A) or (B) above, or in the event no repairs or inspections are required by Buyer, Buyer accepts the property in its entirety in "as is, where is" condition without any implied or express warranty by Seller or by any Broker.

## XII.  RISK OF LOSS.

Risk of loss shall remain with Seller until delivery of deed. In the event that premises shall be damaged by fire or other casualty prior to time of closing, in an amount of not more than 10% of the total purchase price, Seller shall be obligated to repair the same before the date herein provided for delivery of deed. In the event such damage cannot be repaired within said time or if such damage shall exceed such sum, this contract shall be voidable at the option of Buyer. Should Buyer elect to carry out this Contract despite such damage, Buyer shall be entitled to all of the insurance proceeds resulting from such damage.

## XIII.  DEFAULT, REMEDIES AND ATTORNEY'S FEES.

A.  **TIME IS OF THE ESSENCE** hereof, and any party who fails to tender any payment, or perform any other condition hereof as herein provided, shall be in default of this Contract. In the event of default, the non-defaulting party may elect to either treat this Contract as breached and recover such damages as may be proper, or may treat this Contract as being in full force and effect and require specific performance of the items hereof. In lieu of the remedy provided above to Seller if Buyer is the defaulting party, Seller may elect to terminate the Contract and retain all payments made hereunder as liquidated damages, such amount being agreed by the parties hereto to constitute compensation for the loss of opportunity suffered by Seller due to such breach.

B.  In the event that any party shall become in default or breach of any of the terms of this Contract, such defaulting or breaching party shall pay all reasonable attorney's fees costs and other expenses which the non-breaching or non-defaulting party may incur in enforcing this Contract with or without formal proceedings. This provision shall not limit

any other remedies to which the parties may otherwise be entitled.

C. Seller and Buyer agree that in the event of any controversy regarding earnest money or other things of value held by Broker and/or Closing Agent, unless Broker and/or Closing Agent receives written instructions from both Buyer and Seller regarding disposition of the earnest money or things of value, Broker and/or Closing Agent, in its sole discretion, may hold the earnest money or things of value or may interplead all parties and deposit the earnest money deposit or things of value into a court of competent jurisdiction. Broker and/or Closing Agent shall be entitled to recover its attorney's fees and costs from the non-prevailing party in the action in which the funds are interplead, but if no such award or payment is made, Broker and/or Closing Agent shall recover its court costs and reasonable attorney's fees from the interplead funds or things of value.

XIV.  **ADDITIONAL PROVISIONS.**

XV.  **ADDENDA ATTACHED: (Check all that apply.)**

☐ **Lead-Based Paint Disclosure**                              ☐ **Property Condition Disclosure**
☐ **Addendum for Additional Provisions**                 ☐ **1031 Tax Deferred Exchange Notice**
☒ **Real Estate Brokerage Disclosure Form**           ☐ **Evidence of Authority**
☐ **Consent Amendment & In-Company Transaction Disclosure**     ☐ **Security/Damage Deposits**
☐ **Copies of all leases and/or written verifications of rental terms**     ☐ **Other:** _____
☐ **Covenants and Preliminary Title Committment**     ☐ **Receipt Form - WAR Form 900-M**

XVI.  **CONSENTS AND ACKNOWLEDGEMENTS.**

A. All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral agreements or representations between Buyer, Seller or Broker to modify the terms and conditions of this Contract.

B. Brokers are authorized to disclose information regarding this sale, and terms thereof, for comparable sold data and statistics to any Multiple Listing Service, Board of REALTORS®, certified appraisers, or potential clients or customers, but only after the closing of this transaction.

C. This Contract is executed in multiple copies and by their signatures hereon each party acknowledges receipt of a signed copy at the time of signing.

D. Kevin Beck _____ (Broker Working with the Buyer) hereby discloses that it is working with the Buyer as ☐ (Seller's Agent) ☐ (Seller's Subagent) ☐ (Buyer's Agent) ☐ (Intermediary) ☒ (Customer) (select one) and will be compensated by ☒ (Seller) ☐ (Buyer) ☐ (or _____ ) (select applicable). Buyer and Seller consent to that arrangement. Buyer has received, read and acknowledged a Real Estate Brokerage Disclosure and an executed copy of the Disclosure is attached hereto. Broker, working with Buyer, hereby delivers to Broker working with Seller a copy of the executed Real Estate Brokerage Disclosure.

XVII.  **OFFER BY BUYER.** This offer shall expire on or before _____ August 3, 2016 _____, at ____ 1:00 ____ ☐a.m. ☒p.m. Additionally, the undersigned BUYER reserves the right to withdraw this Offer until the original, a copy, electronic transmission or facsimile of this Offer, duly accepted and signed by Seller, has been delivered in writing to the Buyer or Broker working with Buyer prior to the expiration date and time above.

**THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS, CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING.**

Buyer _____ Date 8/2/16
Timothy T. Alexander

Buyer _____ Date _____

Buyer _____ Date _____

Buyer _____ Date _____

XVIII.  **DISCLOSURE BY BROKER WORKING WITH SELLER.**

Broker _____ (Brokerage Firm), hereby discloses that it is working with the Seller as a ☐ (Seller's Agent) ☐ (Intermediary) ☒ (Customer) (Select One) and will be compensated by ☒ (Seller) (or ☐ _____ ) (Select Applicable). Seller consents to this arrangement. Seller has received, read and acknowledged a Real Estate Brokerage Disclosure and an executed copy of the Disclosure is attached hereto. Broker, working with Seller, hereby delivers to Broker working with Buyer a copy of the executed Real Estate Brokerage Disclosure.

Listing Broker hereby acknowledges receipt of the earnest money deposit on _____ at
_____ ☐A.M./☐PM.

Firm _____
Address _____ 801 East 4th Suite 2  Gillette, Wy 82716 _____
Phone ____ 307-682-4200 ____ By _____

THIS OFFER WAS RECEIVED by me as Seller on *Avg. 3rd 2016* at *10:45* _____
☒A.M./☐P.M. *NC* (Seller's Initials).

## XIX. ACCEPTANCE OF SELLER.
THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS, CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING.

NOTICE TO SELLER: If you are making a counter-offer, do not sign this document.

THE UNDERSIGNED SELLER (whether one or more) ACCEPTS the foregoing offer on *Avg 3rd 2016* at *10:55* ☒A.M./☐P.M.

Seller _____ Date *Avg 3, 2016*
Your Computer Store, LLC

Seller _____ Date _____

Seller _____ Date _____

Seller _____ Date _____

## XX. REJECTION BY SELLER.
THIS OFFER IS HEREBY REJECTED ON _____ at _____ ☐A.M./☐P.M.

Seller _____ Date _____
Your Computer Store, LLC

Seller _____ Date _____

Seller _____ Date _____

Seller _____ Date _____

If this Offer is rejected and the rejection is not signed by the Seller above, then this Offer was rejected by oral notification to Broker on _____ and Seller (check one) ☐ authorized rejection or ☐ refused to execute written rejection.



## IMPORTANT NOTICE
## Razor City Realty

### (Name of Brokerage Company)
### REAL ESTATE BROKERAGE DISCLOSURE

When you select a Real Estate Brokerage Firm, Broker or salesperson (all referred to as "Broker") to assist you in a real estate transaction, the Broker may do so in one of several capacities. In accordance with Wyoming's Brokerage Relationships Act, this notice discloses the types of working relationships that are available to you.

**Seller's Agent.**  (Requires written agreement with Seller)

If a Seller signs a written listing agreement with a Broker and engages the Broker as a Seller's Agent, the broker represents the Seller. On properties listed with other brokerage companies, the Broker may work as an agent for the Seller if the Seller agrees to have the Broker work as a subagent. As an agent or subagent for the Seller, the Broker represents the Seller and owes the Seller a duty of utmost good faith, loyalty, and fidelity in addition to the obligations enumerated below for Intermediaries. Wyo. Stat. § 33-28-303(a). The Seller may be vicariously liable for the acts of the Seller's Agent or Seller's Subagent that are approved, directed or ratified by the Seller.

**Customer.**  (No written agreement with Buyer or Seller)

A customer is a party to a real estate transaction who has established no intermediary or agency relationship with any Broker in that transaction. A Broker may work either as an agent for the Seller treating the Buyer as a customer or as an agent for the Buyer treating the Seller as a customer. Also when a Buyer or Seller is represented by another Broker, a Broker may work with the other Buyer or Seller as a customer, having no written agreement, agency or intermediary relationship with either party. A Broker working with a customer shall owe no duty of confidentiality to a customer. Any information shared with Broker may be shared with the other party to the transaction at customer's risk. The customer should not tell the broker any information which the customer does not want shared with the other party to the transaction. The Broker must treat the customer honestly and with fairness disclosing all material matters actually known by the Broker. The Broker owes the Customer the obligations enumerated below for Intermediaries which are marked with an asterisks. W.S. 33-28-310(a).

**Buyer's Agent.**  (Requires written agreement with Buyer)

If a Buyer signs a written Buyer Agency Agreement with a Broker, the Broker will act as an agent for the Buyer. If so, the Broker represents the Buyer and owes the Buyer a duty of utmost good faith, loyalty and fidelity in addition to the obligations enumerated below for Intermediaries. The Buyer may be vicariously liable for the acts of the Buyer's Agent that are approved, directed or ratified by the Buyer. As a Buyer's Agent, Wyoming law requires the Broker to disclose to potential Sellers all adverse material facts, which may include material facts regarding the Buyer's financial ability to perform the terms of the transaction. Wyo. Stat. § 33-28-304(c). As a Buyer's Agent, Broker has duties to disclose to the Buyer certain information; therefore, the Seller should not tell Broker any information which the Seller does not want shared with the Buyer.

**Intermediary.** (Requires written agreement with Seller and/or Buyer)

The Intermediary relationship is a non-agency relationship which may be established between a Broker and a Seller and/or a Broker and a Buyer. A Seller may choose to engage a Broker as an Intermediary when listing a property. A Buyer may also choose to engage a Broker as an Intermediary. An Intermediary shall not act as an agent or advocate for any party and shall be limited to providing those services set forth below. Wyo. Stat. § 33-28-305.

As an Intermediary (Non-Agent), Broker will not represent you or act as your agent. The parties to a transaction are not legally responsible for the actions of an Intermediary and an Intermediary does not owe the parties the duties of an agent, including the fiduciary duties of loyalty and fidelity. Broker will have the following obligations to you:

- perform the terms of any written agreement made by the Intermediary with any party or parties to the transaction;
- exercise reasonable skill and care; *
- advise the parties to obtain expert advice as to material matters about which the Intermediary knows but the specifics of which are beyond the expertise of the Intermediary; *
- present all offers and counteroffers in a timely manner; *
- account promptly for all money and property Broker received; *
- keep you fully informed regarding the transaction; *
- obtain the written consent of the parties before assisting the Buyer and Seller in the same real estate transaction as an Intermediary to both parties to the transaction;
- assist in complying with the terms and conditions of any contract and with the closing of the transaction; *



Exhibit

D

WAR Form 410-0709, Real Estate Brokerage Disclosure
2009 © Wyoming Association of REALTORS®

Serial#: 010389-800147-0170198
Prepared by Rich Kistler | Razor City Realty | nchk@vcn.com | 3076824200

- disclose to the parties any interests the Intermediary may have which are adverse to the interest of either party; *
- disclose to prospective Buyers, known adverse material facts about the property; *
- disclose to prospective Sellers, any known adverse material facts, including adverse material facts pertaining to the Buyer's financial ability to perform the terms of the transaction; *
- disclose to the parties that an Intermediary owes no fiduciary duty either to Buyer or Seller, is not allowed to negotiate on behalf of the Buyer or Seller, and may be prohibited from disclosing information about the other party, which if known, could materially affect negotiations in the real estate transaction.

As Intermediary, Broker will disclose all information to each party, but will not disclose the following information without your informed consent:
- that you may be willing to agree to a price different than the one offered;
- the motivating factors for buying or selling the property;
- that you will agree to financing terms other than those offered; or
- any material information about you, unless disclosure is required by law or if lack of disclosure would constitute dishonest dealing or fraud.

### Change From Agent to Intermediary – In-House Transaction

If a Buyer who has signed a Buyer Agency Agreement with Broker wants to look at or submit an offer on property Broker has listed as an agent for the Seller, the Seller and the Buyer may consent in writing to allow Broker to change to an Intermediary (non-agency) relationship with both the Buyer and the Seller. Wyo. Stat. § 33-28-307.

An established relationship cannot be modified without the written consent of the Buyer or the Seller. The Buyer or Seller may, but are not required to, negotiate different commission fees as a condition to consenting to a change in relationship.

### Designated Agent. (requires written designation by the brokerage firm and acknowledgement by the Buyer or Seller)

A designated agent means a licensee who is designated by a responsible broker to serve as an agent or intermediary for a Seller or Buyer in a real estate transaction. Wyo. Stat. § 33-28-301 (a)(x).

In order to facilitate a real estate transaction a Brokerage Firm may designate a licensee as your agent or intermediary. The Designated Agent will have the same duties to the Buyer and Seller as a Buyer's or Seller's Agent or Intermediary. The Broker or an appointed "transaction manager" will supervise the transaction and will not disclose to either party confidential information about the Buyer or Seller. The designation of agency may occur at the time the Buyer or Seller enters into an agency agreement with the Brokerage Firm or the designation of agency may occur later if an "in house" real estate transaction occurs. At that time, the Broker or "transaction manager" will immediately disclose to the Buyer and Seller that designated agency will occur.

### Duties Owed by An Agent But Not Owed By An Intermediary.

WHEN ACTING AS THE AGENT FOR ONE PARTY (EITHER BUYER OR SELLER), BROKER HAS FIDUCIARY DUTIES OF UTMOST GOOD FAITH, LOYALTY, AND FIDELITY TO THAT ONE PARTY. A BROKER ENGAGED AS AN INTERMEDIARY DOES NOT REPRESENT THE BUYER OR THE SELLER AND WILL NOT OWE EITHER PARTY THOSE FIDUCIARY DUTIES. HOWEVER, THE INTERMEDIARY MUST EXERCISE REASONABLE SKILL AND CARE AND MUST COMPLY WITH WYOMING LAW. AN INTERMEDIARY IS NOT AN AGENT OR ADVOCATE FOR EITHER PARTY. SELLER AND BUYER SHALL NOT BE LIABLE FOR ACTS OF AN INTERMEDIARY, SO LONG AS THE INTERMEDIARY COMPLIES WITH THE REQUIREMENTS OF WYOMING'S BROKERAGE RELATIONSHIPS ACT. WYO. STAT. § 33-28-306(a)(iii).

THIS WRITTEN DISCLOSURE AND ACKNOWLEDGMENT, BY ITSELF, SHALL NOT CONSTITUTE A CONTRACT OR AGREEMENT WITH THE BROKER OR HIS/HER FIRM. UNTIL THE BUYER OR SELLER EXECUTES THIS DISCLOSURE AND ACKNOWLEDGMENT, NO REPRESENTATION AGREEMENT SHALL BE EXECUTED OR VALID. WYO.STAT. § 33-28-306(b).

NO MATTER WHICH RELATIONSHIP IS ESTABLISHED, A REAL ESTATE BROKER IS NOT ALLOWED TO GIVE LEGAL ADVICE. IF YOU HAVE QUESTIONS ABOUT THIS NOTICE OR ANY DOCUMENT IN A REAL ESTATE TRANSACTION, CONSULT LEGAL COUNSEL AND OTHER COUNSEL BEFORE SIGNING.

The amount or rate of a real estate commission for any brokerage relationship is not fixed by law. It is set by each Broker individually and may be negotiable between the Buyer or Seller and the Broker.

On ___AUGUST 2•L 2016_____ (date), I provided ☐ (Seller) ☒ (Buyer) with a copy of this Real Estate Brokerage Disclosure and have kept a copy for our records.

WAR Form 410-0709, Real Estate Brokerage Disclosure
2009 © Wyoming Association of REALTORS®

Serial#: 010389-800147-0170198
Prepared by Rich Kistler | Razor City Realty | nchk@vcn com | 3076824200

Brokerage Company _____ Razor City Realty _____

By _____ *Rich Kistler* _____

I/We have been given a copy and have read this Real Estate Brokerage Disclosure on
(date) _AUGUST 2nd 2016_____ (time) _3:28____ and hereby acknowledge
receipt and understanding of this Disclosure.

Buyer's Signature _____
　　　　　　　　Timothy T. Alexander

Buyer's Signature _____



**R E A L T Y**

801 E. 4th Street
Suite 2
Gillette, Wy 82716
307.682.4200 Office

## Notice to Purchasers

Please understand that our expertise is in marketing real estate. We are not attorneys, accountants, surveyors, engineers, builders, electricians, plumbers, termite inspectors, etc. Questions and concerns will arise that are out of our area of expertise; i.e., legal advise, tax questions, lot line locations, structural condition of the property or conditions, presence of termites. Qualified professionals will have to be retained by you to deal with these issues. We will be glad to coordinate and deal with other professionals to help ensure a successful transaction.

You should plan and anticipate fees of other professions necessary for the transaction. We will do everything we can to help you anticipate the need for services of the other professionals that might need to be necessary for your transaction.

Please feel free to discuss any of this with Razor City Realty's agents or myself.

Thank you,

Kevin Beck
Broker/ Owner

I/ We hereby acknowledge receipt of and acknowledge our understanding the above notice.

Signature_____ Date __8/4/16__

Signature_____ Date_____

Exhibit

E



PRINTED DOCUMENT - THE PAYER SHOULD TO LIGHT TO VIEW ✦ FOR ADDITIONAL SECURITY FEATURES SEE BACK

Razor
R E A L T Y
20 E 2⁷ St
Gillette, Wy 82716
307-682-4200

**CASHIER'S CHECK**                     0903401922

| 0009034 | 11-24 |
| Office AU # | 1210(8) |

Remitter    ANDREW C ALEXANDER
Operator I.D    u284543        u238972

PAY TO THE ORDER OF    ***MICHAEL CARVER***                     August 04, 2016

***Thirty-five thousand dollars and no cents***

Payee Address
Memo              TIM ALEXANDER

**\*\*$35,000.00\*\***

WELLS FARGO BANK, N.A.
500 S DOUGLAS HWY
GILLETTE, WY 82716
FOR INQUIRIES CALL (480) 394-3122

VOID IF OVER US $ 35,000.00

AUTHORIZED SIGNATURE

⑈0903401922⑈ ⑆121000248⑆4861 513067⑈

Property Address *Your Computer Store*          MLS# _____

Seller *Carver* _____          Agent *Kevin* _____ Office *RCR*

Buyer *Alexander* _____          Agent *Rich* _____ Office *RCR*

Amount $ *35,000* _____

Cash _____ Check ✓ _____          Deposit Note _____

Check # *0903401922*          Dated *8/4/16* _____

Received By *K Beel* _____ of Razor City Realty

Date *8/4/16* _____          Time *3:00 pm* _____

Received By *Michael C* _____ of *Your Computer Store, LLC*

Date *8/4/2016* _____          Time *3:04 PM* _____

Exhibit

F



# Razor City Realty

801 E 4th Street  Suite 2
Gillette, Wy  82716

Date
August 4, 2016

Bill To
Your Computer Store
Michael Carver
Gillette, WY 82716

Instructions

| Commission | |
|---|---|
| Sales Price  $35,000.00 with a 5% Commission | $1750.00 |

| | |
|---|---|
| Subtotal | $1,750.00 |
| Total Due | $1,750.00 |

Thank you for your business!

Tel  307-682-4200   Email  Razor@vcn.com
Fax  626 500 0885   Web  www.RazorCityRealty.com

Exhibit

G